2020 IL App (1st) 180014-U

No. 1-18-0014

Order filed April 15, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16 CR 60199 |
| DENZAL STEWART, | ) ) | Honorable Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**O R D E R**

¶ 1     *Held*: Defendant's sentence is vacated and the cause remanded for resentencing where the trial court committed plain error by imposing a Class X sentence based on a prior conviction that did not constitute a qualifying offense.

¶ 2     Following a jury trial, defendant Denzal Stewart was found guilty of possession of a stolen motor vehicle (PSMV)(625 ILCS 5/4-103(a)(1)(West 2016)) and based on his criminal history, sentenced as a Class X offender (730 ILCS 5/5-4.5-95(b)(West 2016)) to the statutory minimum of six years' imprisonment with recommendation for boot camp. After pleading

guilty to a charge of escape, defendant was further sentenced to a two-year term of imprisonment, to be served consecutively to his six-year PSMV sentence. On appeal, defendant contends that his criminal history did not qualify him for Class X sentencing. Defendant also contends that defense counsel rendered ineffective assistance by misadvising him of his eligibility for probation and Class X sentencing. For the reasons that follow, we vacate defendant's sentence and remand the cause for resentencing.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged by information with one count of PSMV under case no. 16 CR 6019901, and placed on electronic home monitoring pending trial. During proceedings on the PSMV charge, the State charged defendant with escape under case no. 16 CR 1601401. The PSMV case proceeded to jury trial. The relevant facts from the pre-trial proceedings and jury trial are as follows.

¶ 5                                A. Pre-Trial Proceedings

¶ 6        On October 28, 2016, defense counsel Debra Gassman informed the court that defendant was "on medication" as part of his drug treatment program in the Cook County Jail. Defense counsel then requested that defendant be evaluated for boot camp, which the trial court granted. On November 2, 2016, the trial court explained to defendant that the State had charged him with escape in case no. 16 CR 1601401 for allegedly violating the conditions of his electronic monitoring on or about September 1, 2016.

¶ 7        On December 8, 2016, defense counsel informed the court that, despite the pending boot camp evaluation, defendant wanted to instead "resolve the matter with probation." Defense counsel stated that she informed defendant that he was not eligible for "any kind of probation" because he had prior Class 1 and Class 2 felony convictions in his background. Defense counsel

further stated that defendant was previously given TASC probation,[1] which he did not complete. The court explained to defendant that he was not eligible for probation and the matter was continued pending boot camp evaluation and screening of defendant's mental health.

¶ 8    On February 2, 2017, defense counsel Michael Biel entered his appearance. The State tendered a plea offer, and held it open until the following court date. On February 27, 2017, the State informed the court that it "extended an offer earlier on a less than a Class X, and [defendant] refused it, or he rejected" it. Prior to setting the case for trial, defense counsel informed the court that defendant was "asking for a TASC evaluation" and also "asking to be evaluated for the possibility of being transferred to drug court." Accordingly, defense counsel requested "a 30 day date to see if he qualifies for either one of those." Defense counsel also acknowledged that defendant was evaluated for "Mental Health Probation," but did not qualify.

¶ 9    On the next court date, defense counsel reported that defendant was evaluated for TASC probation and was found acceptable. The State responded that defendant was ineligible for TASC probation because he had previously received TASC that was terminated unsatisfactorily. Defense counsel agreed that a defendant may only get TASC once and had communicated this to the defendant. Additionally, defense counsel noted that as charged, defendant did not qualify for Adult Re-Deploy, drug court, or mental health probation. Later in the proceeding, defense counsel stated:

    "I would want to make a clear record in this case. When my client was arrested and charged with the possession of stolen vehicle, he was 20 years old. Because he was only

---

[1] TASC probation, also known as "Treatment Alternatives for Criminal Justice Clients" probation is governed by Article 40 of the Alcoholism and Other Drug Abuse and Dependency Act, which provides that an individual with a substance use disorder "may elect treatment under the supervision of a [designated] program." 20 ILCS 301/40-5 *et seq*. (West 2016).

20 years old, Judge, he is not X mandatory. On June first of this year, he turns 21 years old. As a result of that birthday, he will then be X mandatory by law, by statute. I did let my client know that. I just wanted to make that record.

Judge, my client is asking for [a] 402 conference. The State has offered the minimum."

¶ 10     The court explained the 402 conference to defendant as well as the court's role and participation in the conference. Defendant agreed to the court's participation and the court proceeded to conduct a 402 conference. The State offered the minimum sentence on both charges: three years for the PSMV charge and two years for the escape charge, to be served consecutively. The court agreed with the State's recommendation and continued the matter to April 17, 2017 for defendant to consider the offer. Before adjourning, the court noted for the record that "defendant was advised that his birthday will change the sentencing mandatory minimum significantly which is in June."

¶ 11     On April 17, 2017, defense counsel was not present in court. Defendant asked for and was granted a continuance until May 3, 2017 to speak with his counsel regarding the State's 402 offer. On May 3, 2017, defense counsel informed the court that defendant rejected the 402 offer. Defense counsel also stated:

> "If I can just also put on the record that when we did the 402, I stated that it was my belief that based on the law, as of June 1st, when he turned 21 years of age, he would then be X mandatory, Judge, I do not believe that is the case. I believe that the X mandatory — the age of when someone is X mandatory is when they are — when the crime is charged. So that's my position with that.
>
> But, nevertheless, Judge, he is rejecting the offer. He has indicated to me that there is [*sic*] a couple of witnesses he would like me to interview."

- 4 -

¶ 12    The matter was then continued until June 6, 2017 for a final status date. On June 6, 2017, defense counsel requested a Behavioral Clinic Exam (BCX) because defendant "indicated he spent some time in some mental health institutions." The court agreed and the matter was continued. On July 7, 2017, the parties informed the court that they had received a "psychologist's report that said that [defendant] wouldn't cooperate but ***is fit for trial." The court instructed defendant to cooperate with the doctors and continued the matter until August 7, 2017. On that date, the court noted that the report came back indicating that defendant was fit for trial. Defense counsel requested the court "re-open" the 402 conference to consider sentencing defendant to TASC probation. Defense counsel acknowledged that defendant had received TASC probation once before, but argued that he was nevertheless eligible because the prior TASC was terminated unsatisfactorily and the charge was not vacated. In response, the court noted that defendant was ineligible for TASC probation because he had been convicted of residential burglary and had the pending escape charge.

¶ 13    The State then argued that defendant was Class X mandatory because he was no longer 20 years old, which meant that the original plea offer of three years' imprisonment on the PSMV followed by two years' imprisonment on the escape charge was invalid, and that the offer would have to be at least six years and two years. Defense counsel disagreed, arguing that the defendant's age at the time of the offense triggered the statute, meaning that defendant would "never be Class X mandatory" because he was only 20 years old when the offense was allegedly committed. The court asked the parties to tender cases in support of their respective interpretations of the statute. The matter was continued until August 9, 2017.

¶ 14    On August 9, 2017, defense counsel argued that, pursuant to *People v. Brown*, 2015 IL App (1st) 140508, defendant was ineligible for a Class X sentence because he was under the

age of 21 at the time the offense was committed. In response, the State contended that in *People v. Smith*, 2016 IL 119659, our supreme court overruled *Brown* and held that it is the defendant's age at the time of conviction which controls under the Class X sentencing statute. The court agreed with the State that the defendant's age at the time of conviction is the deciding factor in determining whether defendant was Class X mandatory. In response, defense counsel noted that prior to the *Smith* decision in March 2017, the date of the offense or charge was the determining factor. However, defense counsel agreed that because defendant had turned 21 years old, he was Class X mandatory. Defense counsel stated that this was explained to defendant prior to the 402 conference. The court noted that the prior offer of consecutive sentences of three years and two years was no longer valid given defendant's age, and that the minimum sentences were now six years and two years. The court then asked whether defense counsel had explored with the State the possibility of a plea for six years on the PSMV charge, and a *nolle* on the escape charge. The State responded that it did not discuss any offers and defense counsel stated that "Mr. Stewart has never at any point in time expressed any interest in pleading guilty." The matter was continued for jury trial.

¶ 15                                B. Jury Trial

¶ 16        At the jury trial, Franklin Tyler testified that he owned a 1997 Chrysler Sebring convertible in good condition. On August 11, 2016, he parked the Sebring in the driveaway of his house on the South Side of Chicago. The following morning, the car was missing. Tyler still had the car keys and did not give anyone permission to take his car. He reported the car stolen and the police located the car a few days later. When Tyler went to retrieve his car, he noticed wires hanging down from the car's steering column. Tyler also testified that he did not know defendant.

¶ 17    Chicago police officer Ronald Cavanaugh testified that on August 13, 2016, at approximately 8:45 p.m, he was on patrol with his partner Officer Ramirez near 11103 South Michigan Avenue in Chicago, Illinois. They observed a 1997 Chrysler Sebring parked in a no-parking zone, which they discovered to be stolen upon running the plates through an on-board system. The Sebring started to drive northbound on Michigan Avenue and the officers followed for a few blocks until the vehicle came to a stop near 10924 South Wabash Avenue. Cavanaugh then received confirmation via radio that the car was stolen. The officers pulled behind the Sebring, activated their emergency lights, and approached the driver's side on foot. Cavanaugh observed defendant sitting in the driver's seat and saw no one else inside the vehicle. He also observed that a "plastic fortification" behind the steering wheel was cracked and damaged with wires hanging out of the column.

¶ 18    Defendant was ordered out of the vehicle and handcuffed. Cavanaugh testified that defendant "freely admitted" or stated that, "This is my uncle's car. It was stolen earlier. And I just got it back." Cavanaugh returned to the Sebring and drove it to the police station. Cavanaugh saw the ignition had been destroyed and that a flat head screwdriver was on the seat which, based on his experience, was used to start the vehicle. There were no keys in the vehicle and the brakes did not fully engage. After he drove the Sebring to the police station, Cavanaugh notified Tyler who then came to the police station.

¶ 19    On cross-examination, Cavanaugh testified that he nor his partner asked defendant to give a signed statement. There was no video or tape recording of the statement, only what Cavanaugh had stated in his police report.

¶ 20    The defense then moved for a directed verdict, which the court denied. Defendant elected not to testify.

¶ 21    The jury found defendant guilty of PSMV. The State presented information at sentencing that defendant was convicted of residential burglary in 2013 when he was 17 years old and of PSMV in 2014 when he was 18 years old. The trial court found that defendant was subject to mandatory sentencing as a Class X offender based on his prior convictions for residential burglary and PSMV. Accordingly, the court sentenced defendant to the statutory minimum term of six years in the Illinois Department of Corrections, noting that "except for the change in the law" defendant could have received less than a six-year term due to his age at the time of the offense. The court also recommended boot camp but noted that it was unlikely the camp would accept him as he was on psychotropic medication and had a pending escape charge. The court also ordered a three-year term of MSR, and 433 days credit for time served. Defendant then pled guilty to the additional charge of escape in exchange for a minimum two-year sentence, to be served consecutively to the PSMV sentence.

¶ 22    This appeal followed.

¶ 23                                II. ANALYSIS

¶ 24    On appeal, defendant contends that the trial court improperly sentenced him as a Class X offender based on an ineligible prior felony conviction. Defendant further argues that his counsel rendered ineffective assistance by misadvising him regarding his eligibility for probation and whether he would be subject to the mandatory Class X sentencing on the PSMV charge after he turned 21 years old.

¶ 25                            A. Class X Sentencing

¶ 26    Defendant concedes that his 2014 PSMV conviction is a qualifying prior offense under the statute, however, he argues that his 2013 burglary conviction is not a qualifying offense as it was entered when he was 17 years old. Defendant contends that due to subsequent amendments

to the Juvenile Court Act raising the age for exclusive juvenile court jurisdiction to 17 years (see Pub. Act 98-61 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120)), his 2013 burglary conviction is not "an offense classified [on August 13, 2016] in Illinois as a Class 2 or greater Class felony." Rather, it is an offense that on August 13, 2016, would have been resolved with delinquency proceedings in juvenile court. As such, defendant argues that his Class X sentence was improper based on the plain language of subsection 95(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-95(b) (West 2016)). Defendant further contends that even if this court were to find subsection 95(b) of the Code to be ambiguous, the legislative history, the emerging brain science regarding criminal conduct of juveniles, and the rule of lenity warrants a finding that defendant is not subject to Class X sentencing based on a prior conviction at the age of 17.

¶ 27       As an initial matter, defendant acknowledges that he has waived this issue by not objecting to it in the trial court, but maintains that we may review the issue under the second prong of the plain error doctrine. Generally, sentencing issues are forfeited for review unless the defendant both objects to the error at the sentencing hearing and raises the objection in a post-sentencing motion. *People v. Powell*, 2012 IL App (1st) 102363, ¶ 7. Nevertheless, forfeited sentencing issues may be reviewed for plain error where (1) the evidence was closely balanced; or (2) the error was so egregious that the defendant was deprived of a substantial right and thus a fair trial. *People v. Herron,* 215 Ill.2d 167, 178–79 (2005). The first step in a plain error analysis is to determine whether any error occurred. *People v. Lewis,* 234 Ill.2d 32, 43 (2009). This is because "'without error, there can be no plain error.'" *People v. Wooden*, 2014 IL App (1st) 130907, ¶ 10. As such, our inquiry turns to whether the trial court erred in finding

defendant's 2013 burglary conviction to be a qualifying prior offense under the Class X sentencing statute.

¶ 28    The interpretation of a statute involves a question of law which we review *de novo. People v. Simpson*, 2015 IL 116512, ¶ 29. The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent. *Id.* The most reliable indicator of the legislature's intent is the statutory language, given its plain and ordinary meaning. *Id.* In determining the plain and ordinary meaning, a court must analyze a statute in its entirety, construing words and phrases in light of other relevant provisions rather than in isolation. *People v. Smith*, 2016 IL 119659, ¶ 27. Each word, clause and sentence of a statute must be given reasonable meaning and should not be rendered superfluous. *Id.* We will not depart from the plain language by reading in limitations, exceptions, or conditions which the legislature did not express. *Id.* When the language of the statute is clear and unambiguous, it must be applied as written, without resorting to extrinsic aids of statutory construction. *Id.*

¶ 29    Here, the statute at issue is subsection 95(b) of the Code, which provides in relevant part as follows:

> "(b) When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, except for an offense listed in subsection (c) of this Section, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony, except for an offenses listed in subsection (c) of this Section, and those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender." 730 ILCS 5/5-4.5-95(b) (West 2016).

¶ 30    In *People v. Foreman*, this court found the language of subsection 95(b) of the Code to be "clear and unambiguous." 2019 IL App (3d) 160334, ¶ 46. We emphasized that under subsection 95(b), "a trial court must sentence a defendant as a Class X offender if the defendant has prior qualifying felony convictions that satisfy the requirements of the statute." *Id.* ¶ 44. The court noted that the "focus is on the elements of the prior offense" as the plain language of the statute provides that an offense is a qualifying offense if it "contain[s] the same elements as an offense now classified in Illinois as a Class 2 or greater Class felony." *Id.* ¶ 46. The statutory language is also clear that the relevant question is whether the prior offense would have been a Class 2 or greater felony if committed on the date of the present offense. Because the statute is unambiguous in this regard, we need not consider its legislative history, resort to other extrinsic aids of statutory construction, or rely on the rule of lenity. See *People v. Miles,* 2020 IL App (1st) 180736, ¶ 10 (holding that the legislative history need not be considered as the Class X statute is unambiguous); see also *People v. Fiveash*, 2015 IL 117669, ¶ 34 (stating that "the rule of lenity applies only to statutes containing 'grievous ambiguities'").

¶ 31    Having found that the statute is unambiguous, we must now determine whether defendant's 2013 burglary conviction constitutes a qualifying prior offense. We find that it does not. The State contends that it is irrelevant that a 17-year-old who commits residential burglary would now be subject to delinquency proceedings pursuant to an amendment to section 5-120 of the Juvenile Court Act. According to the State, the "amendment to section 5-120 of the Juvenile Court Act, raising the age to 18 years for 'jurisdiction' over felony offenses only applie[s] prospectively." Essentially, the State is arguing that the amendment applies only to violations committed on or after the effective date of January 1, 2014 and not to a 2013 conviction.

¶ 32    Although we are mindful of the effective date of the Act, we also note that for purposes of Class X sentencing, defendant's 2013 burglary is not "an offense now *** classified in Illinois as a Class 2 or greater Class felony." Rather, defendant's prior 2013 burglary conviction, had it been committed under the laws in effect on August 13, 2016, would have been resolved through delinquency proceedings. See *People v. Miles,* 2020 IL App (1st) 180736*, ¶ 11 (holding that a defendant's 2006 conviction, had it been committed in 2016, would have been resolved with delinquency proceedings and therefore, is not a qualifying offense for Class X sentencing). The offense would have led to a juvenile adjudication rather than a felony conviction. As such, defendant's 2013 conviction is not a qualifying prior offense for Class X sentencing.

¶ 33    In arguing against this conclusion, the State asserts that even if defendant's 2013 conviction would have been adjudicated by juvenile court, his conviction could still be used to sentence him as a Class X offender. The State relies on *People v. Jones*, 2016 IL 119391, *Fitzsimmons v. Norgle*, 104 Ill. 2d 369 (1984), *People v. Banks*, 212 Ill. App. 3d 105 (1991), and *People v. Bryant*, 278 Ill. App. 3d 578 (1996) for the proposition that juvenile adjudications can also be used as convictions under subsection 95(b). However, the State's reliance on these cases is misplaced. None of these cases stand for the proposition that a juvenile adjudication is tantamount to a "conviction."

¶ 34    *Jones* involved a different issue than one presented here. In *Jones*, the statute at issue specifically authorized the use of prior juvenile adjudications in imposing an extended-term sentence (730 ILCS 5/5-5-3.2(b)(7) (West 2016)), whereas the statute here is simply limited by its plain language to prior "convictions" and is silent regarding the use of delinquency adjudications (730 ILCS 5/5-4.5-95(b) (West 2016). "When the legislature decides to authorize

certain sentencing enhancement provisions in some cases, while declining to impose similar limits in other provisions within the same sentencing code, it indicates that different results were intended." *People v. Bailey*, 2015 IL App (3d) 130287, ¶ 13.

¶ 35   The State's reliance on *Fitzsimmons, Banks*, and *Bryant* is also misplaced. Citing to *Fitzsimmons*¸ the State argues that "no distinction is drawn between convictions rendered while the defendant was a juvenile and those which occur after the defendant is no longer subject to the authority of the juvenile court." *Fitzsimmons*, 104 Ill. 2d at 372-73. The statute at issue in *Fitzsimmons* was section 5-5-3(c)(2)(F) of the Code, which precludes a defendant from receiving probation if he is convicted of a Class 2 felony or greater within 10 years of a prior conviction. *Fitzsimmons*, 104 Ill.2d at 373. There, our supreme court addressed whether a prior conviction required to trigger section 5-5-3(c)(2)(F) encompasses a conviction under the criminal code when an offender was a juvenile. *Id.* at 372. The court found that "conviction" was defined in the same manner under both the Code and the Criminal Code of 1961. *Id.* Thus, our supreme court held that there was no distinction between convictions rendered while defendant was a minor and convictions which occur after the defendant is no longer subject to juvenile court's authority. *Id.*

¶ 36   The *Fitzsimmons* court's holding, however, no longer applies in light of our supreme court's decision in *People v. Taylor*, 221 Ill. 2d 157 (2006). In *Taylor*¸ our supreme court distinguished the constitutional issue of using juvenile adjudications for enhancement purposes under *Apprendi* from the issue of whether juvenile adjudications constitute "convictions" under the Criminal Code of 1961. The supreme court observed that in the absence of a statute expressly defining a juvenile adjudication as a conviction, Illinois courts have consistently held that juvenile adjudications do not constitute convictions. *Id.* at 176. The supreme court noted

that "[i]t is readily apparent that the legislature understands the need for specifically defining a juvenile adjudication as a conviction when that is its intention" and because the legislature had not done so in the statutory sections at issue in that case, it was "constrained to find that [the legislature] had no intent to do so." *Id.* at 178. Similarly, here, where the statute does not provide that a prior conviction includes juvenile adjudications, we are constrained to find otherwise.

¶ 37    Next, citing to *Banks* and *Bryant*, the State argues that "when construing the Habitual Criminal Act (the HCA), this Court has repeatedly held that any prior [conviction] may be used as a predicate under the statute" and that "no exception is made for convictions obtained while defendant was a juvenile.'"[2] We find the State's argument unavailing.

¶ 38    Both *Banks* and *Bryant* are distinguishable from the present case. There, the courts were presented with arguments focusing solely on the defendants' status as minors at the time they committed their prior offenses. *Banks*, 212 Ill. App. 3d at 107; *Bryant*, 278 Ill. App. 3d at 586. Additionally, the decisions in both cases rested on the *Banks* court's finding that nothing in the Juvenile Court Act or the Criminal Code of 1961 indicated that criminal convictions of minors should be treated differently than criminal convictions of an adult. *Id.* Here, defendant's argument does not rest solely on his age but rather on the amendment to section 5-130 of the Juvenile Court Act, which had the effect of vesting the juvenile court with exclusive jurisdiction over minors. Given that *Banks* and *Bryant* predate this amendment, we find that *Banks* and *Bryant* do not inform our decision.

---

[2] Both *Banks* and *Bryant* involved the Habitual Criminal Statute which is now subsection 95(a) of the Code. See 730 ILCS 5/5-4.5-95(a) (West 2016)(formerly 720 ILCS 5/33B-1).

¶ 39    Having found error occurred, we may provide defendant relief under the second prong of the plain-error doctrine since the unauthorized Class X sentence affected defendant's substantial rights. See *People v. Fort*, 2017 IL 118966, ¶ 19 ("[T]he imposition of an unauthorized sentence affects substantial rights and, thus, may be considered by a reviewing court even if not properly preserved in the trial court.") Accordingly, we vacate defendant's Class X sentence and remand to the circuit court for resentencing as a Class 2 offender.

¶ 40                            B. Ineffective Assistance of Counsel

¶ 41    Although we have found that defendant's sentence should be vacated, it is still necessary to address defendant's claim of ineffective assistance of counsel because this claim cannot be remedied by a new sentencing hearing. Defendant contends that he was denied effective assistance of counsel because counsel "affirmatively misadvised him that he was eligible for probation, and wrongly told him that he was not subject to mandatory Class X sentencing on the PSMV charge after he turned 21." As such, defendant requests this court to not only vacate his conviction and remand for resentencing but to remand his case for "specific performance of the initial plea [offer] of three years on the PSMV charge, followed by two years on the escape charge."

¶ 42    Both the United States and Illinois constitutions guarantee criminal defendants the right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. In *People v. Curry*, 178 Ill. 2d 509, 528 (1997), our supreme court recognized a sixth amendment right to effective assistance of counsel during plea negotiations, holding that a "criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer." (Emphasis in original.) This right "extends to the decision to reject a plea offer, even if the defendant subsequently receives a

fair trial." *Id.* at 518. However, even where a defendant is misinformed by his attorney during plea negotiations, no relief is available unless the defendant can establish the requisite prejudice. *People v. Hale*, 2013 IL 113140, ¶ 18.

¶ 43    We review ineffective assistance of counsel claims under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 688 (1984). The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *People v. Patterson*, 192 Ill. 2d 93, 107 (2000). To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) counsel's performance was objectively unreasonable under prevailing professional norms; and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id. at* 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Hale*, 2013 IL 113140, ¶ 18. In other words, the "defendant must establish that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer." *Id.* To show prejudice in the plea bargaining context where the defendant claims he rejected an offer due to counsel's deficient performance, "a defendant must show that he would have accepted the plea offer but for counsel's erroneous advice, that the State would not have rescinded the offer, and that the trial court would have accepted it." *People v. Brown*, 2015 IL App (1st) 122940, ¶ 66 (citing *Hale*, 2013 IL 113140, ¶ 19). This showing of prejudice must "encompass more than a defendant's own 'subjective, self-serving' testimony" and instead there must be "independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice, and not on other considerations." *Hale*, 2013 IL 113140, ¶ 18.

¶ 44        Here, defendant clearly cannot meet his burden under the prejudice prong. See *Hale*, 2013 IL 113140, ¶ 17 (providing that the court may dispose of an ineffective assistance of counsel claim by proceeding directly to the prejudice prong without addressing counsel's performance). First, defendant argues that counsel "affirmatively misadvised him that he was not Class X mandatory, based on an interpretation of the recidivist statute that the Illinois Supreme Court had rejected months before." Defendant contends that this erroneous advice led him to reject the State's initial offer of three years on the PSMV charge and subjected him to a longer Class X sentence which he would not have faced had counsel advised him correctly.

¶ 45        Defendant does not point to any statements by defense counsel indicating that he advised defendant to reject the initial offer and instead points to counsel's reliance on *Brown,* 2015 IL App (1st) 140508. Defendant contends that counsel's reliance on *Brown*, a case overruled by our supreme court, supports his argument that defense counsel was misinformed of the law and incorrectly advised him that he would never be subject to Class X sentencing as he was under the age of 21 years at the time the offense was committed. However, the record is clear that even prior to defense counsel's reliance on *Brown*, defendant was correctly admonished by both counsel and the trial court that a Class X sentence requires the offender to be 21 years old at the time of conviction. Specifically, on March 29, 2017, defense counsel stated for the record that when defendant was arrested and was charged with the possession of a stolen vehicle, he was 20 years old and not subject to Class X mandatory. However, counsel also noted on record that defendant would turn 21 years old on June 1st of that year which would subject him to sentencing under Class X. Defense counsel stated that this was communicated to defendant. Additionally, during the 402 conference that same day with defendant present, the trial court noted that "defendant has been advised that his birthday will change the sentencing mandatory

minimum significantly which is in June." Despite being correctly admonished in this regard, defendant rejected the State's initial plea offer and defense counsel stated that defendant had not shown any interest in pleading guilty. Any subsequent misinterpretation of the statute by counsel did not prejudice defendant. As such, defendant cannot show that he would have accepted the plea offer but for his counsel's erroneous advice.

¶ 46    Next, defendant argues that defense counsel was ineffective because he pursued an evaluation for boot camp and TASC probation for over a year despite his ineligibility due to his background and mental health issues. Defendant contends that in the course of that one year, he turned 21 years old which subjected him to sentencing under the Class X statute. Defendant's argument is unavailing. The record shows defendant had initially urged counsel to pursue alternatives to sentencing even after being admonished that his twenty-first birthday would raise the minimum available sentence. For instance, the record shows that on February 27, 2017, defense counsel acknowledged defendant's ineligibility for mental health probation but sought TASC evaluation and evaluation for drug court upon defendant's request. In any event, this argument is rendered moot by our conclusion that defendant never became eligible for a Class X sentence.

¶ 47                                III. CONCLUSION

¶ 48    For the reasons stated, we vacate defendant's Class X sentence and remand to the circuit court for resentencing as a Class 2 offender.

¶ 49    Sentence vacated; remanded.