**2022 IL 126116**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126116)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
DENZAL STEWART, Appellee.

*Opinion filed October 20, 2022.*

CHIEF JUSTICE ANNE M. BURKE delivered the judgment of the court, with opinion.

Justices Theis, Neville, and Carter concurred in the judgment and opinion.

Justice Overstreet dissented, with opinion, joined by Justice Michael J. Burke.

Justice Holder White took no part in the decision.

**OPINION**

¶ 1 In 2017, defendant Denzal Stewart was convicted in the circuit court of Cook County of possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West

2016)) and sentenced as a Class X offender to six years in prison. On appeal, the appellate court held that defendant's first felony offense, committed in 2013 when he was 17 years old, was not a qualifying offense for Class X sentencing under section 5-4.5-95(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-95(b) (West 2016)). 2020 IL App (1st) 180014-U. Therefore, that conviction could not serve as a basis for Class X sentencing eligibility. *Id.* Accordingly, the appellate court vacated defendant's Class X sentence and remanded the cause to the circuit court for resentencing as a Class 2 offender. *Id.* ¶ 48. For the reasons that follow, we affirm the appellate court's judgment.

¶ 2                                    BACKGROUND

¶ 3        The appellate court's order contains a detailed description of the trial court proceedings, including a recitation of the evidence presented at trial. For present purposes, a brief summary will suffice. Additional facts will be set forth in the analysis section as necessary for resolution of the issue raised in the instant appeal.

¶ 4        In 2016, defendant, then 20 years old, was charged with one count of possession of a stolen motor vehicle, a Class 2 felony. 625 ILCS 5/4-103(a)(1), (b) (West 2016). The offense was committed on August 13, 2016. During the pendency of the case, defendant turned 21. In 2017, a jury found defendant guilty of the charged offense, and the trial court entered a judgment of conviction.

¶ 5        The trial court found that defendant was subject to mandatory Class X sentencing pursuant to section 5-4.5-95(b) of the Code. At the time of defendant's conviction, this provision stated, in relevant part:

    "(b) When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony and those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender. This subsection does not apply unless:

- 2 -

> (1) the first felony was committed after February 1, 1978 (the effective date of Public Act 80-1099);
>
> (2) the second felony was committed after conviction on the first; and
>
> (3) the third felony was committed after conviction on the second." 730 ILCS 5/5-4.5-95(b) (West 2016).

¶ 6 At sentencing, the State introduced into evidence defendant's two predicate felony convictions—a 2013 conviction for residential burglary, a Class 1 felony (720 ILCS 5/19-3 (West 2012)), and a 2014 conviction for possession of a stolen motor vehicle, a Class 2 felony (625 ILCS 5/4-103 (West 2014)). Accordingly, the trial court found defendant was eligible for Class X sentencing and sentenced him to the statutory minimum term of six years' imprisonment and three years of mandatory supervised release (MSR). See 730 ILCS 5/5-4.5-25(a), (*l*) (West 2016).[1]

¶ 7 On appeal, defendant argued that the trial court erred in finding him eligible for Class X sentencing. Defendant was 17 years old when he was convicted of his first felony offense in 2013. One year later, in 2014, the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2014)) was amended to raise the age for exclusive juvenile court jurisdiction from 16 years to 17 years. See Pub. Act 98-61 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120, 5-130). Defendant argued that if he had committed the residential burglary on August 13, 2016 (the date that the current offense was committed), it would have resulted in a juvenile adjudication, not a felony conviction. He argued, therefore, that it was not a qualifying felony offense for Class X sentencing.

¶ 8 The appellate court agreed that defendant was ineligible to be sentenced as a Class X offender. 2020 IL App (1st) 180014-U, ¶ 32. The court found the statutory language to be clear and unambiguous. *Id.* ¶ 30 (citing *People v. Miles*, 2020 IL App (1st) 180736, ¶ 10). It held that the relevant question for determining whether an offense qualifies as a predicate offense under the statute is "whether the prior

---

[1]Ordinarily, possession of a stolen motor vehicle is a Class 2 felony, punishable by a term of three to seven years in prison. 625 ILCS 5/4-103(b) (West 2016); 730 ILCS 5/5-4.5-35(a) (West 2016).

offense would have been a Class 2 or greater felony if committed on the date of the present offense." *Id.* Applying this question to the instant case, the court held that defendant's residential burglary, "had it been committed under the laws in effect on August 13, 2016, would have been resolved through delinquency proceedings," rather than being tried in adult court. *Id.* ¶ 32. Therefore, the offense would have resulted in a juvenile adjudication rather than a felony conviction. *Id.* A juvenile adjudication does not constitute a "conviction," except where specifically provided by law. *Id.* ¶ 36 (citing *People v. Taylor*, 221 Ill. 2d 157, 176 (2006)). Accordingly, the court held, defendant's 2013 residential burglary offense, committed when he was 17 years old, was not " 'an offense *now* [(the date the Class 1 or Class 2 felony was committed)] classified in Illinois as a Class 2 or greater Class felony,' " within the meaning of section 5-4.5-95(b) of the Code. (Emphasis added.) *Id.* ¶ 32 (quoting 730 ILCS 5/5-4.5-95(b) (West 2016)). Having held that defendant's 2013 conviction was not a qualifying offense under the statute, the appellate court vacated defendant's Class X sentence and remanded the cause to the trial court with directions to resentence defendant as a Class 2 offender. *Id.* ¶ 48.

¶ 9    This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2019). Defendant filed a cross-appeal, arguing that applying section 5-4.5-95(b) of the Code to defendants who were under 21 years of age at the time of all relevant offenses violates the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) and the *ex post facto*, due process, and equal protection clauses of the United States and Illinois Constitutions (U.S. Const., art. I, §§ 9, 10, amend. XIV; Ill. Const. 1970, art. I, §§ 2, 16).

¶ 10    ANALYSIS

¶ 11    At issue in this appeal is whether defendant's 2013 conviction for a Class 1 felony offense at age 17 was a qualifying offense for purposes of Class X sentencing under section 5-4.5-95(b) of the Code. At the outset, defendant forfeited the sentencing issue by failing to object to it in the trial court and raise it in a postsentencing motion. See *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010). Nevertheless, he argued before the appellate court and continues to argue in this

court that the issue is reviewable as plain error.[2] A forfeited claim constitutes plain error in two circumstances:

> "(1) where a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error and (2) where a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2014 IL 117094, ¶ 48.

¶ 12      If defendant is correct that he was statutorily ineligible for a Class X sentence, this would amount to plain error under the second prong of our plain error analysis because it affects defendant's substantial rights. " 'The imposition of an unauthorized sentence affects substantial rights' and, thus, may be considered by a reviewing court even if not properly preserved in the trial court." *People v. Fort*, 2017 IL 118966, ¶ 19 (quoting *People v. Hicks*, 181 Ill. 2d 541, 545 (1998), citing *People v. Brown*, 197 Ill. App. 3d 907, 918 (1990)). Thus, we first must determine whether the trial court's sentencing determination was, indeed, error. See *People v. Hood*, 2016 IL 118581, ¶ 18 (the first task in a plain error analysis is to ascertain whether error occurred at all).

¶ 13      In construing the statute at issue in this appeal, we are guided by the following well-established principles of statutory interpretation. The primary goal in interpreting a statute is to ascertain and give effect to the intent of the legislature. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). The best indicator of legislative intent is the language of the statute itself, given its plain and ordinary meaning. *People v. Gaytan*, 2015 IL 116223, ¶ 23. Where the statutory language is clear and unambiguous, it should be applied without resort to additional aids of statutory construction. *People v. Marshall*, 242 Ill. 2d 285, 292 (2011). A statute is deemed ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). In interpreting an ambiguous statute, a reviewing court may

---

[2]Alternatively, defendant asks this court to review the error as a matter of ineffective assistance of counsel. Our resolution of the issue under a plain error analysis renders an ineffective assistance analysis unnecessary.

consider extrinsic aids of construction to discern the legislative intent. *People v. Eppinger*, 2013 IL 114121, ¶ 21. The construction of a statute is a question of law that is reviewed *de novo*. *Id.*

¶ 14    Section 5-4.5-95(b) of the Code provides that an offense is a qualifying offense for Class X sentencing if it resulted in a conviction "in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony." 730 ILCS 5/5-4.5-95(b) (West 2016).

¶ 15    The State contends that the appellate court's interpretation of the statute is incorrect. According to the State, whether defendant was a juvenile at the time of the prior offense is irrelevant. The State reads the statute to mean that a prior conviction is a qualifying offense if the elements of the prior offense are the same as those of an offense that constitutes a Class 2 or greater Class felony as of the date of the present offense. See *id.* ("an offense *that contains the same elements* as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony" (emphasis added)). Because the offense of residential burglary in 2013 contained the same elements as the offense of residential burglary in 2016, and the defendant's age is not one of those elements, the State argues that defendant's 2013 conviction is a qualifying offense for Class X sentencing.

¶ 16    The State's argument does not answer the precise question raised in this appeal—whether the legislature intended a prior felony conviction to be a qualifying offense for Class X sentencing if the same offense would have resulted in a juvenile adjudication had it been committed on the date of the present offense. On this question, the statute is silent. See *People v. Williams*, 2020 IL App (1st) 190414, ¶ 21 (section 5-4.5-95(b) of the Code is silent regarding the treatment of prior convictions of juveniles in adult court); *Miles*, 2020 IL App (1st) 180736, ¶ 14 (same).

¶ 17    The statute's silence on this question has resulted in a split in our appellate court. Compare *People v. Martinez*, 2021 IL App (1st) 182553, ¶ 63 (holding that a prior conviction is not a qualifying offense for Class X sentencing if it would have been resolved through delinquency proceedings if committed on the date of the present offense), *Williams*, 2020 IL App (1st) 190414, ¶ 21 (same), *Miles*, 2020 IL

App (1st) 180736, ¶ 11 (same), and 2020 IL App (1st) 180014-U, ¶ 32 (same), with *People v. Reed*, 2020 IL App (4th) 180533, ¶ 25 (holding that a prior conviction of a juvenile in adult court is a qualifying conviction for purposes of section 5-4.5-95(b) because nothing in the statute suggests that such conviction should be considered a juvenile adjudication).

¶ 18     This court has recognized that a statute's silence on a particular question is akin to an ambiguity in that it allows this court to look to extrinsic aids of construction to resolve the question. See *Marshall*, 242 Ill. 2d at 297. In this case, however, extrinsic aids are unnecessary to discern the legislative intent. Legislation enacted after the appellate court rendered its conflicting decisions in *Miles* and *Reed* clarified that the General Assembly did not intend for convictions of juveniles in adult court to be considered qualifying offenses for Class X sentencing.

¶ 19     Public Act 101-652 (eff. July 1, 2021) amended section 5-4.5-95(b)(4) of the Code to provide that the first qualifying offense for Class X sentencing must have been "committed when the person was 21 years of age or older." *Id.* (amending 730 ILCS 5/5-4.5-95(b)(4)). The section now reads:

> "(b) When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 forcible felony after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 forcible felony was committed) classified in Illinois as a Class 2 or greater Class forcible felony and those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender. This subsection does not apply unless:
>
>> (1) the first forcible felony was committed after February 1, 1978 (the effective date of Public Act 80-1099);
>>
>> (2) the second forcible felony was committed after conviction on the first;
>>
>> (3) the third forcible felony was committed after conviction on the second; and

(4) the first offense was committed when the person was 21 years of age or older." Pub. Act 101-652 (eff. July 1, 2021).

¶ 20    " 'A subsequent amendment to a statute may be an appropriate source for discerning legislative intent.' " *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 298 (2010) (quoting *In re Detention of Lieberman*, 201 Ill. 2d 300, 320-21 (2002), citing *People v. Parker*, 123 Ill. 2d 204, 211 (1988), and *Carey v. Elrod*, 49 Ill. 2d 464, 472 (1971)). Although a statutory amendment creates a presumption that it was intended to change existing law, this presumption is not controlling. *Id.* at 299 (citing *Parker*, 123 Ill. 2d at 211). A reviewing court should consider the circumstances surrounding the amendment to determine whether the legislature intended merely to interpret or clarify the original act. *Id.* Circumstances that may indicate a legislative intent to clarify rather than make a substantive change in the law include: " 'whether the enacting body declared that it was clarifying a prior enactment; whether a conflict or ambiguity existed prior to the amendment; and whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history.' " *Id.* (quoting *Middleton v. City of Chicago*, 578 F.3d 655, 663-64 (7th Cir. 2009)).

¶ 21    As we have explained, prior to the legislature amending section 5-4.5-95(b) of the Code, a conflict in our appellate court existed regarding the meaning of this provision. In *Miles*, the appellate court held that a prior conviction that would have been resolved with delinquency proceedings in juvenile court rather than criminal proceedings was not " 'an offense now *** classified in Illinois as a Class 2 or greater Class felony' " and, therefore, was not a qualifying offense for Class X sentencing. *Miles*, 2020 IL App (1st) 180736, ¶ 11. In so holding, the court found the statutory language to be clear and unambiguous. *Id.* ¶ 10. In *Reed*, the appellate court also found the statutory language unambiguous, but it reached the opposite conclusion as to its meaning. *Reed*, 2020 IL App (4th) 180533, ¶ 26. There, the appellate court held that a prior conviction of a 17-year-old defendant in adult court could serve as a qualifying offense for Class X sentencing because the plain language of the statute did not require a court to consider the defendant's age at the time of the prior offense. *Id.* ¶¶ 26-29.

¶ 22    The existence of these conflicting appellate court decisions negates the presumption that the legislature intended to change existing law when it amended

the statute to require that qualifying offenses must have been committed when the person was 21 years of age or older. See *K. Miller Construction Co.*, 238 Ill. 2d at 300. "Because of the differing views in the appellate court, there was no clear interpretation of the law to be changed." *Id.* Accordingly, the split in the appellate court, when considered with the silence in the previous version of the statute on this issue, leads us to conclude that Public Act 101-652 was intended to resolve the conflict in the appellate court and clarify the meaning of the original statute. See *id.* at 301. We therefore hold that defendant's 2013 conviction for an offense committed when he was 17 years old was not a qualifying offense for Class X sentencing under the previous version of section 5-4.5-95(b) of the Code.

¶ 23 We hold that the trial court erred in sentencing defendant as a Class X offender under section 5-4.5-95(b) and affirm the judgment of the appellate court. Having determined that defendant's sentence was properly vacated by the appellate court based on his statutory ineligibility for Class X sentencing, we need not address the issues raised in defendant's cross-appeal.

¶ 24 CONCLUSION

¶ 25 For the foregoing reasons, we affirm the judgment of the appellate court vacating defendant's Class X sentence and remanding the cause to the circuit court with directions to resentence defendant as a Class 2 offender.

¶ 26 Appellate court judgment affirmed.

¶ 27 Sentence vacated; cause remanded.

¶ 28 JUSTICE OVERSTREET, dissenting:

¶ 29 I respectfully dissent from the majority's conclusion that the circuit court erred in sentencing defendant as a Class X offender under section 5-4.5-95(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-95(b) (West 2016)) and that the appellate court correctly determined that defendant's 2013 conviction was not a qualifying predicate offense for Class X sentencing under that section.

¶ 30    To reiterate, on August 13, 2016—the date defendant committed the offense resulting in his latest conviction—section 5-4.5-95(b) provided, in relevant part:

"When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony ***, that defendant shall be sentenced as a Class X offender." *Id.*

¶ 31    At the outset of its analysis, the majority aptly defines the issue as "whether defendant's 2013 conviction for a Class 1 felony offense at age 17 was a qualifying offense for purposes of Class X sentencing under section 5-4.5-95(b) of the Code." *Supra* ¶ 11. The clear answer to this is yes.

¶ 32    However, subsequently, the majority reframes the issue as "whether the legislature intended a prior felony conviction to be a qualifying offense for Class X sentencing *if the same offense would have resulted in a juvenile adjudication had it been committed on the date of the present offense*." (Emphasis added.) *Supra* ¶ 16.

¶ 33    The majority's reframed question implicates the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2016)), which was amended in 2014 to raise the age for exclusive juvenile court jurisdiction from 16 to 17 years of age. See Pub. Act 98-61 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120, 5-130). Notably, however, the legislature expressly provided that the amendment would not have retroactive application. See *id.*

¶ 34    Thus, the majority's question presents a hypothetical that mandates three flawed presumptions: (1) that defendant committed residential burglary in 2016 rather than 2013 (*i.e.*, "had it been committed on the date of the present offense" (*supra* ¶ 16)); (2) that defendant would have still been 17 years old had he committed residential burglary in 2016 rather than 2013 (*i.e.*, "if the same offense would have resulted in a juvenile adjudication" (*supra* ¶ 16)); and (3) that the case would not have been transferred to adult court had the first two presumptions been met. See, *e.g.*, 705 ILCS 405/5-805(2) (West 2016) (some juvenile cases are presumptively transferred to adult court under certain circumstances); *id.* § 5-805(3) (on the State's motion, discretionary transfer of juvenile cases to adult

court); *id.* § 5-810 (on the State's motion, juvenile may be tried as an adult and receive two sentences: (1) a juvenile sentence and (2) an adult conviction and sentence that are stayed unless the defendant violates the terms of the juvenile sentence).

¶ 35 The majority's improper restructuring of the issue diverts attention from this court's clear task of construing section 5-4.5-95(b) of the Code, as the interpretation is readily discernible by the plain language. The State aptly notes, and I agree, that the appellate court's judgment—and thus the majority's conclusion here—contradicts the plain language of section 5-4.5-95(b). The section articulates the requirements for a previous offense to qualify for Class X sentencing in terms of the elements of the offense, which in no way implicate defendant's age. See (730 ILCS 5/5-4.5-95(b) (West 2016).

¶ 36 Here, defendant was over 21 years of age in 2017 when he was convicted of possession of a stolen motor vehicle—a Class 2 felony. See *id.* The offense underlying this conviction was committed on August 13, 2016. Defendant's previous offenses include a 2013 conviction of residential burglary—a Class 1 felony—and a 2014 conviction of possession of a stolen motor vehicle—a Class 2 felony. As noted, the parties do not dispute that defendant's 2014 conviction is a qualifying offense for purposes of Class X sentencing under section 5-4.5-95(b). At issue is defendant's 2013 conviction of residential burglary.

¶ 37 It is axiomatic that, unless a statute's language is ambiguous, courts must apply the statute as written. *People v. Clark*, 2019 IL 122891, ¶ 26. Here, I find section 5-4.5-95(b) is unambiguous, and its plain language establishes that a prior conviction is a qualifying offense for purposes of Class X sentencing when two requirements are satisfied: (1) defendant was previously convicted of an offense, and (2) the prior offense has the same elements as an offense that is "now classified" as a Class 1 or Class 2 felony—with "now" being the date the latest Class 1 or Class 2 felony was committed—here August 13, 2016. See 730 ILCS 5/5-4.5-95(b) (West 2016). Nothing further is required.

¶ 38 Pursuant to the plain language of section 5-4.5-95(b), offense elements are the only considerations in determining whether the prior offense qualifies for Class X sentencing, and defendant's age is not one of those elements. The plain language establishes that, for a previous offense to qualify for Class X sentencing under

section 5-4.5-95(b), defendant must have previously been convicted of the offense, and the elements of the offense must match those of an offense that constituted a Class 2 or greater Class felony as of the date the present offense was committed. See *id.*

¶ 39    Applied here, the prior offense at issue is defendant's 2013 residential burglary conviction. The offense of residential burglary was a Class 1 felony in 2013 and was a Class 1 felony on August 13, 2016. Moreover, the offense of residential burglary in 2013 contained the same elements as the offense of residential burglary on August 13, 2016. Pursuant to the plain language of section 5-4.5-95(b), defendant's 2013 residential burglary conviction is a qualifying prior offense for Class X sentencing.

¶ 40    Notwithstanding that the issue—whether defendant's 2013 conviction is a qualifying offense for purposes of Class X sentencing under section 5-4.5-95(b)— is resolved by the plain language of the section, the majority confuses the issue by reframing the question into a convoluted hypothetical, suggests that the Code's silence on that hypothetical "is akin to an ambiguity" (*supra* ¶ 18), and then cites that purported ambiguity to validate looking beyond the plain language and observing circumstances surrounding the amendment of section 5-4.5-95(b) to determine the legislature's intent (*supra* ¶ 20).

¶ 41    The majority highlights the amendment to section 5-4.5-95(b) (*supra* ¶ 19), which, *inter alia*, added the following requirement for a prior offense to qualify for Class X sentencing: "the first offense was committed when the person was 21 years of age or older." Pub. Act 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(b)). According to the majority, this amendment operates to clarify existing law, which was intended to omit juvenile offenses from the qualifying predicate felonies.

¶ 42    While the majority acknowledges that a statutory amendment is presumptively intended to change the existing law, it emphasizes that the presumption does not always govern, as circumstances surrounding the amendment should be considered in determining whether the legislature intended to change the existing law or to clarify it. *Supra* ¶ 20. Citing *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 299 (2010), the majority observes that the following factors are relevant in determining whether an amendment is a mere clarification or a substantive change

of the law: (1) whether the legislature expressed that it was clarifying the prior law, (2) whether a conflict existed before the amendment was enacted, and (3) whether the amendment is compatible with a reasonable interpretation of the prior law and its legislative history. S*upra* ¶ 20.

¶ 43    Yet the majority considers only the second factor. The majority notes that section 5-4.5-95(b) was amended after the conflict arose, which the majority concludes rebuts the presumption that the amendment served to change the existing law. S*upra* ¶ 22. Considering the conflict among appellate court decisions, along with the Code's silence on the hypothetical question, the majority concludes that "Public Act 101-652 was intended to resolve the conflict *** and clarify the meaning of the original statute." *Supra* ¶ 22. I respectfully disagree.

¶ 44    Courts may not "depart from a statute's plain language by reading into the law exceptions, limitations, or conditions that the legislature did not express." *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 408 (2010). Moreover, "a statute will not be construed as creating ambiguities where they do not exist." *Kapinus v. State Farm Mutual Automobile Insurance Co.*, 317 Ill. App. 3d 185, 187 (2000). No ambiguity regarding section 5-4.5-95(b) as it read prior to the amendment has been found by any court, aside from the majority asserting the hypothetical question and suggesting the Code's silence on that question was "akin to an ambiguity." See *supra* ¶ 18.

¶ 45    Notwithstanding the conflicting decisions of the appellate court, the consensus among the districts—as well as both parties before this court—is that the prior version of section 5-4.5-95(b) was unambiguous. Indeed, every appellate court decision cited by the majority on this issue (*supra* ¶ 17) found section 5-4.5-95(b) to be unambiguous. See *People v. Martinez*, 2021 IL App (1st) 182553, ¶ 62; *People v. Williams*, 2020 IL App (1st) 190414, ¶¶ 16, 21; *People v. Miles*, 2020 IL App (1st) 180736, ¶ 10; *People v. Reed*, 2020 IL App (4th) 180533, ¶ 29; 2020 IL App (1st) 180014-U, ¶¶ 30-31.

¶ 46    I agree that, prior to the statutory amendment, section 5-4.5-95(b) was unambiguous, and it is thus inappropriate to look beyond the plain language. See *Clark*, 2019 IL 122891, ¶ 26. However—for purposes of responding to the majority—assuming, *arguendo*, that the section's silence on the hypothetical question is indeed "akin to an ambiguity" as the majority suggests (see *supra*

¶ 18)—I do not agree that the circumstances surrounding the amendment to section 5-4.5-95(b) demonstrate a legislative intent to clarify the existing law. Rather, I find controlling the presumption that the amendment served to change the existing law (see *K. Miller Construction Co.*, 238 Ill. 2d at 298), as well as the presumption that the legislature amended the statute with the knowledge of the judicial decisions interpreting the statute (see *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 273 (2010)).

¶ 47     Notably, although the majority enumerates three factors that are relevant in determining whether the legislature intended an amendment to change the law or to clarify it (*supra* ¶ 20), it examines only one. I find it appropriate to consider all three factors.

¶ 48     First, in considering whether the legislature expressed that it was clarifying the existing law (see *supra* ¶ 20), it is noteworthy that, when the General Assembly amends a statute to clarify an existing law, it frequently provides correlating declarations indicating such. See, *e.g.*, 205 ILCS 635/1-3(e) (West 2016) ("The changes made to this Section by [Public Act 99-113, § 5 (eff. July 23, 2015)] are declarative of existing law."); 735 ILCS 5/12-112 (West 1998) ("This amendatory Act of 1997 (P.A. 90-514) is intended as a clarification of existing law and not as a new enactment."); 735 ILCS 5/12-903 (West 2002) ("This amendatory Act of the 92nd General Assembly is intended as a clarification of existing law and not as a new enactment."); 735 ILCS 5/9-111 (West 2002) (same).

¶ 49     Here, the amendment of section 5-4.5-95 was established by Public Act 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95)—also known as the "SAFE-T Act" (see Jessica Reichert, Aaron Zivic, & Karen Sheley, Ill. Criminal Justice Info. Auth., The 2021 SAFE-T Act: ICJIA Roles and Responsibilities (July 15, 2021), https://icjia.illinois.gov/researchhub/articles/the-2021-safe-t-act-icjia-roles-and-responsibilities [https://perma.cc/AU8W-R8EN]). Nowhere does the legislature express that the amendments derived from Public Act 101-652 were intended as clarifications of existing law and not as new enactments. To the contrary, the legislature has made clear that Public Act 101-652 and its associated amendments are intended to change the existing law.

¶ 50     Public Act 101-652 provides that "[t]he Unified Code of Corrections is amended by *changing* Section[ ] *** 5-4.5-95." (Emphasis added.) Pub. Act 101-

652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95). Moreover, the sponsoring representative of House Bill 3653 (101st Ill. Gen. Assem., House Bill 3653, 2021 Sess.)—which underlies Public Act 101-652—described the bill as "a robust, transformative, bold, and vicious initiative to *comprehensively reform* our criminal justice system." (Emphasis added.) 101st Gen. Assem., House Proceedings, Jan. 13, 2021, at 4 (statements of Representative Slaughter). Indeed, Public Act 101-652 impacts several aspects of the criminal justice system in Illinois and many of its provisions—including the amended section 5-4.5-95 of the Code— took effect on July 1, 2021. See Pub. Act 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95). For the stated reasons, I find the legislature's express intent (see *supra* ¶ 20) supports a conclusion that the amendment of section 5-4.5-95 of the Code was intended to change the law, rather than clarify it.

¶ 51    Second, in observing the conflict within the appellate court prior to the amendment (see *supra* ¶ 20), I disagree with the majority's conclusion that "Public Act 101-652 was intended to resolve the conflict *** and clarify the meaning of the original statute." *Supra* ¶ 22. Rather than finding a statute is *per se* ambiguous because of different interpretations in the lower courts, reviewing courts must first examine the statutory language and conclude that the statute is ambiguous before considering the different interpretations in the lower courts to support the finding of ambiguity. See *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369, 379 (2008).

¶ 52    While a conflict exists on the interpretation of section 5-4.5-95(b) (*supra* ¶ 17), each panel in the cited decisions expressly determined that section 5-4.5-95(b) is unambiguous. See *Martinez*, 2021 IL App (1st) 182553, ¶ 62; *Williams*, 2020 IL App (1st) 190414, ¶¶ 16, 21; *Miles*, 2020 IL App (1st) 180736, ¶ 10; *Reed*, 2020 IL App (4th) 180533, ¶ 29; 2020 IL App (1st) 180014-U, ¶¶ 30-31. Moreover, the majority's conclusion is not based on a review of the plain language of section 5-4.5-95 but on the Code's silence on the majority's hypothetical question. See *supra* ¶ 18. I further find unreasonable the interpretations of section 5-4.5-95(b) in the decisions from the First District, which are based on the same presumptions adopted by the majority here and not on the plain language.

¶ 53    Accordingly, although the conflict existed before the legislature amended section 5-4.5-95 (see *supra* ¶ 20), because section 5-4.5-95(b) is unambiguous, the

conflict may not be used to support a finding of ambiguity (see *Ready*, 232 Ill. 2d at 379). For these reasons, I disagree with the majority's conclusion that the amendment "was intended to resolve the conflict in the appellate court and clarify the meaning of the original statute." S*upra* ¶ 22.

¶ 54    Regarding the third factor (see s*upra* ¶ 20), I do not find the amendment to section 5-4.5-95(b) to be a reasonable interpretation of the previous version of the section, which was silent on a defendant's age when enumerating the requirements for a prior offense to qualify for Class X sentencing. See 730 ILCS 5/5-4.5-95(b) (West 2016). Indeed, the amendment substantively changed the prior version of section 5-4.5-95(b) by imposing the following additional requirement for the prior offense to qualify: "the first offense was committed when the person was 21 years of age or older." See Pub. Act 101-652 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-95(b)). This establishes that defendant's age was irrelevant until the amendment became effective on July 21, 2021, which is four years after defendant was sentenced in this case. As such, the amendment does not govern defendant's sentence.

¶ 55    In addition, the amended section 5-4.5-95(b) now requires the latest conviction, as well as the two prior convictions, to be Class 1 or Class 2 *forcible* felonies, which also substantively changes the previous version of the section. See *id.* Based on these substantive revisions, I would conclude that section 5-4.5-95's amendment is not a reasonable interpretation of the previous version of the section and it was intended to change the existing law rather than clarify it.

¶ 56    For the foregoing reasons, I respectfully dissent from the majority and conclude that the circuit court was correct in sentencing defendant as a Class X offender pursuant to section 5-4.5-95(b) of the Code. Accordingly, I would reverse the judgment of the appellate court.

¶ 57    JUSTICE MICHAEL J. BURKE joins in this dissent.

¶ 58    JUSTICE HOLDER WHITE took no part in the consideration or decision of this case.