NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 180595-UB

NO. 4-18-0595

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 18, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| KEYVELL L. LEWIS, | ) | No. 17CF837 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Steigmann and Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The trial court committed plain error by imposing Class X sentencing on
defendant's bribery conviction where he was only 16 at the time he committed
his first Class 2 or greater felony.

¶ 2         In December 2017, the State charged defendant, Keyvell L. Lewis, by information
with one count of bribery (720 ILCS 5/33-1(a) (West 2016)) and one count of communicating
with a witness (720 ILCS 5/32-4(b) (West 2016)).  After a July 2018 trial, the jury found
defendant guilty of bribery.  Defendant filed a motion for a new trial, which was denied.  At an
August 2018 hearing, the Vermilion County circuit court found defendant was eligible for Class
X sentencing under section 5-4.5-95(b) of the Unified Code of Corrections (Unified Code) (730
ILCS 5/5-4.5-95(b) (West Supp. 2017)) and sentenced him to 20 years' imprisonment for
bribery.  Defendant filed a motion to reconsider his sentence, which the court denied in
September 2018.

¶ 3        Defendant appealed, contending the trial court erred by (1) sentencing him as a Class X offender because one of his prior convictions was not a qualifying conviction due to his age at the time he committed the offense and (2) failing to consider two statutory mitigating factors and improperly considering an aggravating factor in sentencing defendant. This court affirmed defendant's bribery conviction and sentence. *People v. Lewis*, 2020 IL App (4th) 180595-U. Defendant filed a petition for leave to appeal with the Illinois Supreme Court.

¶ 4        On November 30, 2022, the supreme court denied defendant's petition for leave to appeal but issued a supervisory order (*People v. Lewis*, No. 126786 (Ill. Nov. 30, 2022)), directing this court to vacate our prior judgment and reconsider our decision in light of *People v. Stewart*, 2022 IL 126116, on the issue of whether defendant was eligible for Class X sentencing. After our reconsideration, we reverse defendant's 20-year sentence for bribery and remand the cause for a new sentencing hearing.

¶ 5                              I. BACKGROUND

¶ 6        While the State charged defendant by information with both bribery and communicating with a witness, it only tried defendant on the bribery charge. The bribery count alleged that, on February 27, 2017, defendant, with the intent to influence the performance of any act related to the function of a witness, T.S., in Vermilion County case No. 17-CF-38 (hereinafter case No. 17-CF-38), promised T.S. property or personal advantage, namely United States currency and a shopping trip for clothes and shoes, which T.S. was not authorized or allowed to accept. The information also stated defendant was subject to Class X sentencing under section 5-4.5-95(b) and the sentence had to run consecutively to any sentence in case No. 17-CF-38.

¶ 7        On July 10, 2018, the trial court commenced a jury trial on the bribery charge.

The State presented the testimony of (1) T.S.'s mother, Cassaundra V.; (2) Dawn Hartshorn, a Danville police officer; and (3) Susan Wilson, a victim witness advocate with the Vermilion County State's Attorney's office. The State also presented two recordings and a transcript of the video recording. Defendant did not present any evidence.

¶ 8 Cassaundra testified she was the mother of T.S. and four other children, three of whom had defendant as their father. Cassaundra and defendant had been in a relationship for 11 years. Defendant was not T.S.'s father, but he had been present for most of T.S.'s life. On January 11, 2017, defendant was arrested and removed from the family home. About a week later, Cassaundra had a telephone call with defendant while he was in jail. Cassaundra identified a recording of that telephone conversation (State's exhibit No. 1), and the trial court admitted it into evidence without an objection. On February 28, 2017, Cassaundra took T.S. with her to the health department for a video visit with defendant, who was still in jail. Cassaundra also identified the video recording of that visit (State's exhibit No. 2), and the court admitted the video recording without objection.

¶ 9 Officer Hartshorn testified she was a juvenile investigator and her responsibilities included talking to witnesses at the police department, where the interview could be audio and video recorded. On or about January 12, 2017, she was called into work to interview 14-year-old T.S., who was with Cassaundra. Officer Hartshorn interviewed T.S. alone for about 30 minutes. Thereafter, Officer Hartshorn interviewed Cassaundra and then defendant. She also collected other evidence. As a result of her investigation, defendant was charged with a felony and T.S. was the victim of the felony. According to Officer Hartshorn, T.S. was a witness for the charges in which she was a victim. Additionally, Officer Hartshorn identified State's exhibit No. 1 as the audio recording of the telephone conversation between Cassaundra and defendant and State's

exhibit No. 2 as the video recording of the visit between Cassaundra, T.S., and defendant. She also identified State's exhibit No. 3, which was a transcript of the video recording. Both recordings were played for the jury.

¶ 10 During the audio recording (State's exhibit No. 1), defendant told Cassaundra the State would need T.S. as a witness. He further explained that, if T.S. did not show up, the State would not have a case. He also told Cassaundra she could take the family and leave. In the video recording of the visit between defendant, T.S., and Cassaundra, defendant asked T.S. and Cassaundra where they were going after the visit, and T.S. responded they were going shopping. Defendant remarked they could not go shopping until defendant got home. He then told T.S., "[A]ll you gotta do is come to court and tell 'em man this is some bullshit." Defendant further stated to T.S. the following:

> "I'm tryin to hold that money so when hopefully I come home, which is up to you, this is up to you, so all you have to do is sit up here and tell them I lied on Keys because I was tired of my momma and him fighting. That's it. The rest of this shit is up to you. I'm not thinkin about whoopin your ass, I'm not thinking about that, I need to get home. Just like you, you called us and told is to get your ass home, that's what I did, I told your momma go get you. Now you need to get me home because you got little brothers and sisters that need me."

Defendant later told T.S. he had "about eight thousand dollars, but see we [could]n't spend it until you get me home, black ass. Yeah. Yeah. You." He again conveyed to T.S. she needed to come to court and do what her mother told her to do. Defendant emphasized the quicker he got home, the quicker they could go shopping for groceries, clothes, and shoes. Later in the conversation, defendant again told T.S. he needed her to come to court and "drop this." He

- 4 -

emphasized to T.S. to do what her mother told her to do.

¶ 11       After Officer Hartshorn's testimony and the videos, the parties' following stipulation was read into the record: "One, on December 27, 2017, the Defendant, Keyvell Lewis, was charged with three counts alleging felony conduct. Two, [T.S.] was the named victim and complaining witness in all three counts." In his brief, defendant notes the stipulation appears to set forth a description of the charges in case No. 17-CF-38, and those charges were filed on January 13, 2017, and not December 27, 2017.

¶ 12       Wilson testified Cassaundra brought T.S. to the office on February 6, 2018. Wilson and the prosecutor met with T.S. to explain the process of a jury trial and to learn what T.S. was going to say. At the meeting, T.S. said defendant did not do it. Wilson showed T.S. a video of her earlier statement to police. At first, T.S. did not remember saying any of it but then said she made it up because she wanted defendant out of the house. T.S. wanted him to stop fighting her mother. After the meeting was over, T.S. left with Cassaundra.

¶ 13       At the conclusion of the trial, the jury found defendant guilty of bribery. Defendant filed a timely motion for a new trial, which the trial court denied after an August 10, 2018, hearing.

¶ 14       On August 22, 2018, the trial court held the sentencing hearing. The State presented five certified convictions for defendant. The first conviction was in Cook County case No. 05-CR-2385701, where defendant pleaded guilty to armed robbery, a Class X felony. The second conviction was in Cook County case No. 02-CR-0770301, where defendant pleaded guilty to forgery, a Class 3 felony. The third conviction was in Cook County case No. 00-CR-2912001, where defendant pleaded guilty to forgery, a Class 3 felony. The first three convictions were in defendant's real name. The fourth and fifth convictions were in Cook

County case No. 96-CR-3192201, where defendant pleaded guilty to robbery, a Class 2 felony, and aggravated battery, a Class 3 felony. The charges in case No. 96-CR-3192201 were in the name of Matthew Martin and filed on December 9, 1996. The presentence investigation report (1) noted defendant admitted using the alias of Matthew Martin in 1996 and (2) listed defendant's birthdate as October 30, 1980. All five certified convictions were admitted. However, defendant did object to the admission of the fourth and fifth convictions based on them not being in defendant's actual name. The trial court admitted them over defendant's objection.

¶ 15        In addition to the certified convictions and presentence investigation report, the State presented the testimony of Officer Hartshorn. Officer Hartshorn testified about the basis for the charges in case No. 17-CF-38, which were criminal sexual assault charges. She also testified that, when police officers first made contact with defendant in investigating the allegations in case No. 17-CF-38, defendant gave three different names: Matthew Roberson, Darrell Thorn, and Matthew Martin. Additionally, Officer Hartshorn stated the state's attorney's office received letters in late February or early March 2018, purportedly from T.S. and Cassaundra, advising T.S. had lied about defendant's actions because she wanted Cassaundra and defendant to stop fighting. Officer Hartshorn spoke with T.S.'s cousin, Jocelyn V., who informed her Cassaundra had written the letters, T.S. had found the letters, Cassaundra offered T.S. money, and T.S. did not feel comfortable lying. During cross-examination, defense counsel moved to strike Officer Hartshorn's testimony. The trial court refused to strike Officer Hartshorn's testimony but noted its sentencing was not going to be based on the underlying charges that were still pending.

¶ 16        The State recommended a sentence of 28 years' imprisonment based on defendant's extensive criminal history. In addition to defendant's criminal history, the State

contended the other statutory aggravating factors that applied were (1) a long sentence was necessary to deter others from committing the same crime and (2) defendant's conduct caused or threatened serious harm. The State also emphasized the serious nature of the underlying charges and the fact defendant was a father figure to T.S. Last, the State asserted defendant had little rehabilitative potential. Defense counsel asked for a short prison sentence and encouraged the court to find the first two statutory mitigating factors applied. Defense counsel also contended the court should consider in mitigation another person's conduct influenced defendant's actions, defendant acted in concert with Cassaundra, defendant was employed, defendant's family was dependent on him, and T.S. had recanted her allegations. Defendant made a statement in allocution. He noted he did not intend to commit a crime while in jail. His intention was trying to prove he did not criminally sexually assault his stepdaughter. He apologized for putting his family through this and noted his only mistake was being intoxicated and fighting with Cassaundra.

¶ 17        After hearing the parties' arguments, the trial court first explained it did not find any mitigating factors applied. The court then found defendant caused emotional and mental harm to T.S. and probably defendant's entire family, found the sentence was necessary to deter others from committing the same crime, and defendant had minimal rehabilitative potential. It also noted this was an adult versus child situation and defendant was the adult. Additionally, the court found defendant was subject to Class X sentencing under section 5-4.5-95(b). At the conclusion of the hearing, the court sentenced defendant to 20 years' imprisonment for bribery.

¶ 18        Defendant filed a timely motion to reconsider his sentence, asserting, *inter alia*, the trial court erred by finding the statutory mitigating factors contained in section 5-5-3.1(a)(1), (2), and (5) of the Unified Code (730 ILCS 5/5-5-3.1(a)(1), (2), (5) (West 2016)) did not apply in

his case. Defendant also contended the court erred by finding defendant caused serious harm. Additionally, defendant argued his sentence was excessive. At an August 30, 2018, hearing, the court denied defendant's motion to reconsider his sentence.

¶ 19                                    II. ANALYSIS

¶ 20                                A. Class X Sentencing

¶ 21         Defendant first argues the trial court erred by sentencing him as a Class X offender for the Class 2 felony of bribery under section 5-4.5-95(b) of the Unified Code (730 ILCS 5/5-4.5-95(b) (West Supp. 2017)) because his robbery conviction was committed when he was 16 years old and would not be a Class 2 felony under current law. Defendant contends section 5-4.5-95(b) demands the sentencing court look at the classification of the prior offense at the time defendant committed the offense for which he was being sentenced. Defendant recognizes he did not preserve this issue for appeal but contends we should review the matter under the plain-error doctrine (Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)).

¶ 22         The plain-error doctrine permits a reviewing court to consider unpreserved error under the following two scenarios:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that
> the error alone threatened to tip the scales of justice against the defendant,
> regardless of the seriousness of the error, or (2) a clear or obvious error occurred
> and that error is so serious that it affected the fairness of the defendant's trial and
> challenged the integrity of the judicial process, regardless of the closeness of the
> evidence." *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1058
> (2010).

¶ 23         We begin our plain-error analysis by first determining whether any error occurred

at all.  *Sargent*, 239 Ill. 2d at 189, 940 N.E.2d at 1059.  If error did occur, this court then considers whether either of the two prongs of the plain-error doctrine has been satisfied. *Sargent*, 239 Ill. 2d at 189-90, 940 N.E.2d at 1059.  Under both prongs, the defendant bears the burden of persuasion.  *Sargent*, 239 Ill. 2d at 190, 940 N.E.2d at 1059.

¶ 24        At the time of defendant's sentencing, section 5-4.5-95(b) of the Unified Code (730 ILCS 5/5-4.5-95(b) (West Supp. 2017)) stated, in pertinent part, the following:

> "When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, except for an offense listed in subsection (c) of this Section, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now (the date the Class 1 or Class 2 felony was committed) classified in Illinois as a Class 2 or greater Class felony, except for an offense listed in subsection (c) of this Section, and those charges are separately brought and tried and arise out of different series of acts, that defendant shall be sentenced as a Class X offender."

The aforementioned provision did not apply unless the following criteria were also met:

> "(1) the first felony was committed after February 1, 1978 (the effective date of Public Act 80-1099);
>
> (2) the second felony was committed after conviction on the first; and
>
> (3) the third felony was committed after conviction on the second."  730 ILCS 5/5-4.5-95(b) (West Supp. 2017).

Additionally, section 5-4.5-95(c) of the Unified Code (730 ILCS 5/5-4.5-95(c) (West Supp. 2017)) provided the aforementioned provision does not apply to Class 1 or Class 2 felony convictions for a violation of section 16-1 of the Criminal Code of 2012 (720 ILCS 5/16-1 (West

- 9 -

2018)).

¶ 25        *In People v. Stewart*, 2022 IL 126116, ¶ 14, our supreme court interpreted a previous version of section 5-4.5-95(b) (730 ILCS 5/5-4.5-95(b) (West 2016)) that contained the same relevant language as the version at issue in this case. The supreme court specifically addressed "whether the legislature intended a prior felony conviction to be a qualifying offense for Class X sentencing if the same offense would have resulted in a juvenile adjudication had it been committed on the date of the present offense." *Stewart*, 2022 IL 126116, ¶ 16. The supreme court answered the question in the negative based on a later amendment to section 5-4.5-95(b) (Pub. Act 101-652 (eff. July 1, 2021)), which added a fourth requirement that the first qualifying offense was committed when the person was 21 years of age or older. *Stewart*, 2022 IL 126116, ¶ 22. The supreme court explained its consideration of the split in the appellate court on the interpretation of the previous version with the silence in that version of the statute on this issue led it to conclude Public Act 101-652 was intended to resolve the conflict in the appellate court and clarify the meaning of the original statute. *Stewart*, 2022 IL 126116, ¶ 22. On the facts of that case, the court held the defendant's 2013 conviction for an offense committed when he was 17 years old was not a qualifying offense for Class X sentencing under the applicable version of section 5-4.5-95(b). *Stewart*, 2022 IL 126116, ¶ 22.

¶ 26        In this case, the State presented certified convictions from Cook County for defendant's five prior felony convictions. Only two of the felonies were Class 2 or greater Class felonies: the armed robbery conviction for an offense charged in 2005 and the robbery conviction for an offense charged in 1996. Defendant would have been 16 years old at the time the robbery charge was filed. As such, defendant's 1996 offense was not a qualifying offense for Class X sentencing under the applicable version of section 5-4.5-95(b). *Stewart*, 2022 IL

126116, ¶ 22. Since defendant was statutorily ineligible for a Class X sentence, his Class X sentence amounts to plain error under the second prong of the plain-error analysis because it affects defendant's substantial rights. See *Stewart*, 2022 IL 126116, ¶ 12.

¶ 27    Accordingly, we remand the cause for a new sentencing hearing on defendant's bribery conviction, a Class 2 felony (720 ILCS 5/33-1(a) (West 2016)).

¶ 28                              B. Sentencing Factors

¶ 29    Since we have found defendant is entitled to a new sentencing hearing, we do not address his alternative argument the trial court failed to consider two statutory factors in mitigation and relied on the aggravating factor defendant caused psychological "serious harm" when no evidence supported its conclusion.

¶ 30                              III. CONCLUSION

¶ 31    For the reasons stated, we reverse defendant's 20-year sentence for bribery and remand the cause to the Vermilion County circuit court for a new sentencing hearing.

¶ 32    Reversed and remanded with directions.