2025 IL App (1st) 231194-U

THIRD DIVISION
February 5, 2025

No. 1-23-1194

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the Circuit Court of |
| | ) Cook County. |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) No. 17 CR 14924 |
| | ) |
| NAJEE REED, | ) |
| | ) Honorable Sophia Atcherson, |
| Defendant-Appellant. | ) Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1   *Held:*  The trial court did not err in denying defendant's petition for relief from judgment. Defendant's appointed counsel provided due diligence.  Affirmed.

¶ 2   Following a bench trial, defendant Najee Reed was found guilty, *inter alia*, of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2016))[1] and sentenced to nine years' imprisonment.  We affirmed his conviction and sentence on direct appeal.  See *People v. Reed*,

_____

[1] Effective January 1, 2025, this offense has been retitled as "Unlawful possession of a firearm by a repeat felony offender."  See Pub. Act. 103-822, § 20 (eff. Jan. 1, 2025) (amending 720 ILCS 5/24-1.7).

2021 IL App (1st) 181966-U (*Reed I*). Defendant then filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)), which the trial court denied. Defendant now appeals, contending that the court erred in denying[2] his 2-1401 petition because his prior conviction, due to acts committed when he was 17, is not a qualifying predicate offense for an AHC conviction. In the alternative, he contends that his appointed counsel failed to provide due diligence with respect to his petition. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                      BACKGROUND

¶ 4       This court has detailed the underlying facts of this case in *Reed I*. See *Reed I*, 2021 IL App (1st) 181966-U, ¶¶ 3-15. We provide only those facts pertinent to the issues before us.

¶ 5                                    Prior Proceedings

¶ 6       In a multi-count indictment, the State charged defendant with one count of AHC, four counts of unlawful use of a weapon by a felon (UUWF), and four counts of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), 24-1.6(a)(3)(D) (West 2016)) in connection with an incident in Chicago on September 23, 2017. The State, however, nol-prossed the AUUW counts and two of the UUWF counts, proceeding only on the AHC count (count I) and two of the UUWF counts (counts II and III). In particular, the AHC count alleged that, on or about September 23, 2017, defendant knowingly or intentionally possessed a firearm after having been previously convicted of UUWF and residential burglary.

¶ 7       At trial, the evidence established that, at around 10:45 p.m. on September 23, 2017, Chicago police officer Andrew Braun and his partner were on patrol in the 840 block of East 64th

---

[2] Defendant erroneously contends that the court "dismissed" his petition. The report of proceedings and the common law record, however, reveal that the court denied his petition.

Place in Chicago. They turned southbound into an L-shaped alley and saw defendant and another individual, Javon Jones, at the corner where the alley turned east. The officers drove about halfway down, at which point Jones looked in defendant's direction and yelled, "12-12, go, go, go." Braun stated that, based upon his experience, "12" meant "police." Braun then saw defendant climb over a chain-link fence into a yard and heard a metal object striking concrete near the fence. The officers got out of their car and gave chase. Braun eventually detained Jones at the corner of the alley and then recovered a handgun from the middle of a walkway near where defendant had climbed over the fence. Defendant was arrested and brought to the police station, where he stated that the gun belonged to Jones and that defendant was merely holding it for Jones.

¶ 8     The State also entered certified copies of convictions into evidence showing defendant was sentenced to: (1) four years' imprisonment for a Class 1 residential burglary conviction in 2014, and (2) four years' imprisonment for a Class 2 UUWF conviction in 2016.[3] The trial court subsequently found defendant guilty on all counts, merged the UUWF convictions into the AHC conviction, and sentenced defendant to nine years' imprisonment.

¶ 9     Defendant filed his notice of appeal on August 8, 2018. On May 22, 2019 (while his direct appeal was pending), defendant filed a *pro se* "motion to vacate void judgment/conviction." Defendant's motion argued, in essence, that his AHC and prior AUUW convictions must be vacated because of our supreme court's holding in *People v. Aguilar*, 2013 IL 112116. On August 19, 2019, the trial court denied defendant's motion. Defendant did not appeal that order.

---

[3] Although the residential burglary conviction was under the name "Marchant Whitaker" and the UUWF conviction was under the name "Merchant Whitaker," the parties stipulated that defendant was both of those named individuals.

¶ 10    On August 26, 2021, this court issued its decision on defendant's direct appeal. Although defendant contended that he received ineffective assistance of trial counsel, we rejected his claim and affirmed his conviction and sentence. See *Reed I*, 2021 IL App (1st) 181966-U, ¶¶ 1, 26-27.

¶ 11                    Defendant's Successive 2-1401 Petition

¶ 12    On January 5, 2022,[4] defendant filed the present, successive 2-1401 petition. In essence, defendant contended that his 2018 AHC conviction should be reversed because his 2013 conviction for residential burglary (which he committed in 2012 when he was 17 years old) could no longer qualify as an eligible predicate offense. He explained that, in 2014, the legislature amended the Juvenile Court Act of 1987 (705 ILCS 405/5-101 *et seq.* (West 2014)) (the Juvenile Court Act) to provide that, *inter alia*, a 17-year-old could no longer be charged in adult criminal court for residential burglary.[5] Defendant then reasoned that, since the residential burglary charge would have resulted in a juvenile delinquency and not a criminal conviction at the time of his arrest for AHC in 2017, the State thus lacked two or more qualifying convictions as required to sustain a conviction for AHC. Therefore, defendant asked the court to reverse his AHC conviction and remand for resentencing on the UUWF convictions.

¶ 13    On July 11, 2022, the trial court appointed counsel to assist defendant with respect to his successive 2-1401 petition. Defense counsel then asked for a continuance so that she could review

---

[4] We note that the record indicates that the circuit clerk erroneously file-stamped this petition as January 5, "2021" immediately next to the correct date of January 5, 2022. Neither party raises an issue with this inadvertent oversight. The online docket of the circuit clerk confirms the 2022 filing year. This court may take judicial notice of the public documents that are included in the records of other courts. *In re Linda B.*, 2017 IL 119392, ¶ 31 n.7; Ill. Rs. Evid. 201 (eff. Jan. 1, 2011)), 803(8) (eff. Jan. 25, 2023)).

[5] Defendant's petition erroneously states that the year of the amendment was 2016. See Pub. Act 98-61, § 5 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120 (West 2012)).

the appellate record on defendant's case. Defense counsel stated that she would confer with defendant on his petition. The matter was then continued to November 14, 2022.

¶ 14    On November 14, 2022, the parties appeared before the trial court. Defense counsel asked for a further continuance because she had been having difficulty connecting with defendant. Counsel stated that she would like to speak to defendant to ascertain his contentions and "what he has to support his position." The cause was then continued to March 1, 2023.

¶ 15    On March 1, 2023, defense counsel said that she intended to "rest on" defendant's filings. The State then requested a couple of weeks to determine whether it would file a response to defendant's petition, and it indicated that it "would like to talk to [defense counsel] about it." Defense counsel agreed, adding that she would like to speak to the State to "perhaps shed some light on the questions [defendant] presented." The cause was then continued to April 20, 2023.

¶ 16    On April 20, 2023, defense counsel informed the trial court that she had filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). On that same day, the State filed its motion to dismiss. The court then continued the matter.

¶ 17    On May 25, 2023, the trial court held a hearing on defendant's successive 2-1401 petition. At the hearing, defense counsel stated that she had reviewed defendant's *pro se* § 2-1401 petition, the appellate record, the court file, the AHC statute, and the four cases cited in the petition (*People v. Taylor*, 221 Ill. 2d 157 (2006); *People v. Gray*, 2021 IL App (1st) 191086; *People v. Williams*, 2020 IL App (1st) 190414; and *People v. Miles*, 2020 IL App (1st) 180736). Counsel said she did not supplement the petition and rested without further argument.

¶ 18    Following the State's argument, the trial court announced its ruling. The court stated that it had reviewed the petition, the State's response, case law relied upon and cited by both parties,

and "other relevant statutes." Based upon its review, the court denied the petition, finding that there was "no current legal basis" to rule in defendant's favor.

¶ 19 Shortly before the court confirmed the denial of the petition, defendant interjected, stating that he tried to tell his appointed counsel to supplement his petition with another case, *People v. Stewart*, 2022 IL 126116,[6] but she failed to do so. Counsel responded that she did review *Stewart* but found that it was distinguishable, stating, "I believe [*Stewart*] was an adjudication in juvenile court as were a couple of the other two cases *** and those couldn't apply to this case because I believe [defendant] was sentenced *** in criminal court." The court then told defendant, "it sounds like *** your attorney[ ] did consider your request and looked into whether she would be supplementing it ***, and she did not choose to supplement your petition." The trial court then denied defendant's petition. This appeal follows.

¶ 20                                    ANALYSIS

¶ 21 Before this court, defendant challenges the trial court's denial of his successive *pro se* 2-1401 petition on two grounds. First, he argues that one of the two predicate offenses supporting his AHC conviction—namely, his 2014 residential burglary conviction—is not a "qualifying conviction" because he committed that offense when he was 17 years old. Second, he argues in the alternative that, his appointed counsel provided "unreasonable assistance" when she failed to supplement his petition with relevant authority and then argue that authority.

¶ 22                     I. The Predicate Offense for the AHC Conviction

¶ 23 As noted above, defendant contends that the trial court erroneously denied his successive 2-1401 petition because his residential burglary conviction, which he committed in 2012 when he

---

[6] The report of proceedings erroneously states the case title as "People v. Stuart."

was 17 years old,[7] cannot be a qualifying conviction for his present AHC conviction. Defendant first observes that the legislature amended the Juvenile Court Act in 2014 and raised the age limit for prosecution in adult criminal court from 17 to 18. Defendant next argues that, for purposes of the as-amended AHC statute, a prior conviction only qualifies under the current AHC statute if the prior conduct would have resulted in a conviction at the time of the AHC charge. Defendant then concludes that his 2012 residential burglary conviction can no longer serve as a predicate offense for his AHC conviction because he was charged under the AHC statute in 2017, after the 2014 amendment. Defendant thus asks that we reverse the court's denial of his petition, reverse his AHC conviction, and remand for resentencing on his remaining UUWF conviction.

¶ 24    Section 2-1401 of the Code of Civil Procedure establishes a comprehensive, statutory procedure to vacate a final judgment older than 30 days. 735 ILCS 5/2-1401 (West 2022). With certain exceptions not relevant here, however, the petition must be filed "not later than" two years after the entry of the order or judgment. 735 ILCS 5/2-1401(c) (West 2022). In addition, although a section 2-1401 petition is filed in the same proceeding in which the final order or judgment was entered, it is not a continuation of the original action. 735 ILCS 5/2-1401(b) (West 2022); *People v. Vincent*, 226 Ill. 2d 1, 7 (2007). Rather, it is a new cause of action subject to the rules of civil procedure. *Id.* at 8. In addition, while a section 2-1401 petition is usually characterized as a civil remedy, its remedial powers extend to criminal cases. *Id.* Relief under this section requires proof, by a preponderance of evidence, of both (1) a defense or claim that would have precluded entry of

---

[7] The State argues that the record reveals a discrepancy as to defendant's birth year and complains that the trial court "simply accepted" defendant's correction as to his birth year listed on his presentence investigation report. The State, however, failed to raise any objection before the trial court, thus forfeiting any claim on appeal. See, *e.g.*, *People v. Turner*, 2012 IL App (2d) 100819, ¶¶ 26-27. In any event, our resolution of this issue is unaffected by defendant's exact age at the time of the residential burglary offense.

the judgment in the original action and (2) diligence in both discovering the defense or claim and presenting the petition. *Id.* at 7-8. A trial court's judgment on the pleadings or dismissal in a section 2-1401 proceeding is reviewed *de novo. Id.* at 18.

¶ 25 At the outset, defendant recognizes that his successive petition was filed more than three years after his sentencing. Nonetheless, he argues that the State failed to raise timeliness in the trial court, resulting in the forfeiture of that claim. The State agrees that it did not raise the issue of timeliness before the court below, forfeiting any such objection, but it states that it is still a petitioner's burden to show diligence in presenting his claim. Our supreme court has long held that, where (as here) the State fails to lodge an untimeliness objection to a criminal defendant's 2-1401 petition before the trial court, that argument is forfeited on appeal. See *People v. Pinkonsly*, 207 Ill. 2d 555, 564 (2003) ("If the State wished to argue that the defendant's section 2-1401 petition was untimely, it should have done so before the trial court, where any amendments could have been made and any factual disputes could have been resolved. [Citation.] The State waived its timeliness argument."). In addition, defendant sufficiently established diligence by stating that he filed his petition shortly after the decision in *Gray*. Based upon this fact and the holding in *Pinkonsly*, we reject the State's argument and now turn to the merits of defendant's claims.

¶ 26 Defendant's first contention of error centers on statutory construction, the principles of which are well established. When construing a statute, our goal is to "ascertain and give effect to the intent of the legislature." *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). This inquiry begins with the language of the statute, "the best indicator of legislative intent." *Id.* Where the language in the statute is clear and unambiguous, we apply the statute as written without resort to extrinsic aids of statutory construction. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6-7 (2009). Since all provisions of a statutory enactment are viewed as a whole, we interpret the statute in light

of other relevant portions of the statute and do not construe words and phrases in isolation. *Carver v. Sheriff of La Salle County*, 203 Ill. 2d 497, 507-08 (2003). We must further presume that the legislature did not intend absurdity, inconvenience, or injustice. *Id.* at 508. In essence, we must employ a " 'practical and common-sense construction.' " *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25 (quoting *Automatic Voting Machine Corp. v. Daley*, 409 Ill. 438, 447 (1951)). The interpretation of a statute is a question of law that we also review *de novo*. *Id.* ¶ 16.

¶ 27    Section 24-1.7(a) of the Criminal Code of 2012 (Code) states in part as follows:

> "A person commits the offense of being an armed habitual criminal if he *** possesses *** any firearm after having been convicted a total of 2 or more times of any combination of the following offenses:
>
> > (1) a forcible felony *as defined in* Section 2-8 of this Code;
> >
> > (2) unlawful use of a weapon by a felon; ***; or
> >
> > (3) any violation of the Illinois Controlled Substances Act or the Cannabis Control Act that is punishable as a Class 3 felony or higher." (Emphasis added.) 720 ILCS 5/24-1.7(a) (West 2016)

Section 2-8 of the Code defines "forcible felony" to include, *inter alia*, residential burglary, but it does not include juvenile adjudications. 720 ILCS 5/2-8 (West 2016). The parties correctly agree that a juvenile delinquency adjudication is not a conviction for purposes of the AHC statute. See *People v. Taylor*, 221 Ill. 2d 157, 176-78 (2006) (holding that a juvenile adjudication does not constitute a conviction except where specifically provided by law).

¶ 28    In 2012, when defendant committed the residential burglary offense at issue here, section 5-120 of the Juvenile Court Act provided in part that no minor who was under 17 years of age at

the time of the alleged offense would be prosecuted "under the criminal laws of this State." 705 ILCS 405/5-120 (West 2012). As such, when defendant was charged with residential burglary in 2012, the juvenile court had exclusive jurisdiction to adjudicate that offense if committed by persons aged 16 or younger. *Id.* Since defendant at the time of the offense was 17 years old and not *under* 17, section 5-120 did not apply to him, and he was tried and convicted as an adult.

¶ 29    In 2014, however, the legislature raised the age for exclusive juvenile jurisdiction from 16 to 17 years of age, with certain exceptions not relevant here. See Pub. Act 98-61, § 5 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120, 5-130). Thus, if a 17-year-old committed residential burglary in 2014 (the same offense defendant committed in 2012), that 17-year-old would *presumptively* be subject to juvenile-court jurisdiction, where he risked being "adjudicated delinquent" but not convicted of a criminal offense. Notably, Public Act 98-61 included a provision that this change to juvenile-court jurisdiction would "apply to violations or attempted violations committed on or after the effective date of this amendatory Act," *i.e.*, January 1, 2014. *Id.* (amending 705 ILCS 405/5-120). In addition, Public Act 98-61 did not alter section 5-805(3) of the Juvenile Court Act, which allows the State to seek a discretionary transfer to criminal courts under certain conditions. See *id.*

¶ 30    In this case, defendant contends that his 2012 residential burglary conviction is no longer a felony "as defined in" the Code because of the subsequent amendment of the Juvenile Court Act. Defendant argues that, under the law in effect when he was tried and convicted of AHC, a 17-year old charged with residential burglary would have been tried in juvenile court, which at most would have resulted in a juvenile adjudication and not a "conviction." Therefore, defendant reasons that the State did not have two qualifying convictions supporting the AHC conviction, warranting

reversal of the denial of his 2-1401 petition, reversal of the AHC conviction, and remand for resentencing on the remaining UUWF conviction. We disagree.

¶ 31    As a preliminary matter, we reject defendant's assertion that he would have been tried in juvenile court had he been charged with residential burglary after the amendment of the Juvenile Court Act. Although the 2014 amendment did increase the age for exclusive juvenile jurisdiction from 16 to 17 years of age (with certain exceptions not relevant here) (see Pub. Act 98-61, § 5 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120)), the State could still seek a discretionary transfer from juvenile court to criminal court. See 705 ILCS 405/5-120 (West 2014) (stating in relevant part that no minor under 18 years of age *at the time of the alleged offense* could be prosecuted under the criminal law except as provided in section 5-805); 705 ILCS 405/5-805(3) (West 2014) (allowing the State to seek discretionary transfer under certain conditions).[8] Defendant's assertion thus amounts to mere speculation and is unpersuasive. Accord *People v. Irrelevant*, 2021 IL App (4th) 200626, ¶ 38, *pet. for leave to appeal pending*, No. 128048 (Jan. 6, 2022).

¶ 32    Furthermore, we agree with the court in *Irrelevant* that, for purposes of the AHC statute, a defendant's prior conviction serves as a predicate conviction if it was for an offense described in subsections (a)(1) through (a)(3) of the AHC statute. *Id.* ¶ 35. Applying the aforementioned principles of statutory construction, the plain and unambiguous language of the AHC statute indicates that the legislature wanted to punish individuals who possess or transfer firearms after having been twice convicted of not just any crime but rather, those offenses it deemed to be of sufficient gravity—in subsection (a)(1), forcible felonies. The use of the implied present tense of the language "as defined" in subsection (a)(1) of the AHC statute merely allows the legislature to

---

[8] These statutes are substantially the same as those in effect in 2017, the specific year that defendant was alleged to have committed the AHC offense.

reclassify certain crimes as forcible felonies (and thus AHC predicate crimes) in response to public policy changes. In essence, the "as defined" language simply describes the offense itself. Therefore, to sustain a charge under the AHC statute in this case, the State was required to establish that defendant possessed any firearm after having at least two prior convictions. One of the prior convictions was for UUWF, which satisfied the requirement under subsection (a)(2) of the statute. See 720 ILCS 5/24-1.7(a)(2) (West 2016). The other prior conviction was for residential burglary, which *at the time of the AHC charge*, was classified as a forcible felony by the legislature and satisfied the requirement under subsection (a)(1) of the statute. See 720 ILCS 5/24-1.7(a)(1) (West 2016); 720 ILCS 5/2-8 (West 2016).

¶ 33 In addition, we note that text of the amendment plainly stated that the changes contemplated therein only applied to violations committed after the effective date of the act: January 1, 2014. See Pub. Act 98-61, § 5 (eff. Jan. 1, 2014) (amending 705 ILCS 405/5-120, 5-130). Since the legislature specifically provided that the amendment should not be applied retroactively and we must employ a "practical and common-sense construction" (*Hartney Fuel Oil Co.*, 2013 IL 115130, ¶ 25), defendant's commission of the residential burglary offense in 2012 would be unaffected by the amendment. Defendant's claim of error on this point is thus meritless.

¶ 34 Moreover, we reject defendant's reliance upon "the reasoning" in two appellate court opinions. *People v. Gray*, 2021 IL App (1st) 191086, *rev'd on other grounds*, 2024 IL 127815; *People v. Dawson*, 2022 IL App (1st) 190422, *vacated and remanded for reconsideration*, No. 129136 (May 29, 2024). As defendant points out, although those cases are no longer good law, our supreme court in *Gray* reversed based upon the fact that the defendant had stipulated at trial that he had two qualifying convictions and thus did not opine on the precise issue here, which was the rationale employed by the appellate courts in *Gray* and *Dawson*. *Gray*, 2024 IL 127815, ¶ 28

("Since defendant's sole challenge is to the sufficiency of the evidence and we have found the stipulation to be determinative, we do not have cause to address defendant's arguments regarding the statutory interpretation of the armed habitual criminal statute and the effect of *People v. Stewart*, 2022 IL 126116 ***."). Regardless, we agree with the reasoning in *Irrelevant* that, for purposes of the AHC statute, a defendant's age is not an element of the offense; rather, the elements are simply (1) knowing possession of a firearm and (2) two prior qualifying convictions. See *Irrelevant*, 2021 IL App (4th) 200626, ¶ 38; 720 ILCS 5/24-1.7(a) (West 2016). Consequently, defendant's reliance upon the reasoning in *Gray* and *Dawson* is unavailing.

¶ 35    Finally, we reject defendant's reliance upon *People v. Stewart*, 2022 IL 126116. There, our supreme court interpreted a completely different statute, section 5-4.5-95(b) of the Unified Code of Corrections (730 ILCS 5/5-4.5-95(b) (West 2016)). *Id.* ¶ 1. We recognize that the question presented there—namely, "whether the legislature intended a prior felony conviction to be a qualifying offense for Class X sentencing if the same offense would have resulted in a juvenile adjudication had it been committed on the date of the present offense" (*Id.* ¶ 16)—is somewhat similar to the question here. The similarities, however, end there. The court noted that the legislature subsequently amended the statute in question, which effectively resolved the then-existing split in the appellate court. *Id.* ¶ 21-22. In this case, by contrast, there has been no subsequent legislative activity to resolve the differing interpretations of the AHC statute. Defendant nevertheless argues that our supreme court's holding in *Stewart* "supports the notion that the legislature's aim is to punish defendants for their current conduct and dangerousness, not their past." Here, however, defendant *has* been punished for his current conduct: knowing possession of a firearm despite having two prior serious convictions. Defendant's reliance upon *Stewart* is therefore misplaced, and we must reject his contention of error.

¶ 36                    II. Appointed Counsel's Performance

¶ 37    In the alternative, defendant contends that, should this court reject his challenge to the use of his prior residential burglary conviction as a predicate offense for his AHC conviction, we should nonetheless remand this matter for further proceedings because his appointed counsel failed to provide due diligence with respect to his petition.    Specifically, defendant argues that his appointed counsel wrongfully (1) failed to supplement his petition with two decisions (*People v. Dawson*, 2022 IL App (1st) 190422; *People v. Stewart*, 2022 IL 126166) that supported his claim for relief and (2) "made no mention of even reading *Dawson*" and declined to rely upon *Stewart* based upon a purported misunderstanding of that decision.    Defendant asks that we reverse the denial of his petition and remand for further proceedings with different appointed counsel.

¶ 38    Although defendant initially asserts that counsel failed to provide a "reasonable level of assistance" based upon the holding in *Pinkonsly*, he retreats from that position on reply based upon the subsequent holding in *People v. Stoecker*, 2020 IL 124807, that counsel must exercise "due diligence." *Id.* ¶ 42.  In light of this new standard, defendant argues in reply that appointed counsel did not exercise due diligence because she did not "use new and relevant caselaw, especially when there was a split of authority" on the issue raised in the petition.

¶ 39    A petitioner seeking to collaterally attack a criminal conviction has no constitutional right to the assistance of counsel.  *People v. Stoecker*, 2020 IL 124807, ¶ 35 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); and *People v. Guest*, 166 Ill. 2d 381, 412 (1995)).  Although an attorney in a criminal trial serves as a shield for defendants to protect them from being "haled into court and stripped of their presumption of innocence," petitioners seeking collateral review have already been stripped of that presumption and have also failed to obtain relief on appellate review.  (Internal quotation marks removed.)  *Id.* (citing *People v. Owens*, 139 Ill. 2d 351, 364-65 (1990)

(quoting *Ross v. Moffitt*, 417 U.S. 600, 610 (1974))). In addition, although the Post-Conviction Hearing Act (725 ILCS 5/122-4 (West 2022)) provides an express statutory right to the assistance of counsel, a 2-1401 petitioner has no such right. *Id.* ¶ 36 (citing *Pinkonsly*, 207 Ill. 2d at 568). Thus, although a trial court is not obligated to appoint counsel with respect to a 2-1401 petition, it may still do so in the sound exercise of its discretion. *Id.*

¶ 40    Until *Stoecker*, our supreme court had not articulated any "specific standards of performance or requirements" regarding counsel appointed to represent a section 2-1401 petitioner. *Id.* ¶ 37. The court observed that, although a petitioner under the Post-Conviction Hearing Act has the right to "reasonable assistance" pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), that rule is merely the mechanism "by which the court effectuates the statutory right to counsel" under that specific act. *Id.* ¶ 40. The *Stoecker* court thus rejected that standard for counsel appointed to represent a 2-1401 petition, recalling the holding in *Vincent* that the Post-Conviction Hearing Act has " 'no application whatsoever to section 2-1401, an entirely different form of statutory collateral relief.' " *Id.* ¶ 41 (quoting *Vincent*, 226 Ill. 2d at 6).

¶ 41    Instead, the *Stoecker* court held that the discretionary appointment of counsel in 2-1401 proceeding merely requires "the same due diligence as any lawyer would be required to perform in assisting his or her client." *Id.* ¶ 42 (citing *Tedder v. Fairman*, 92 Ill. 2d 216, 226-27 (1982); Ill. Rs. Prof'l Conduct (2010)). The court then held that, within that context, appointed counsel has the obligation "to the best of his or her legal ability, to make a cogent argument in support of petitioner's section 2-1401 claims and to overcome any procedural hurdles where it can legally and ethically be done." *Id.* Finally, although the court agreed with the petitioner that, after a discretionary appointment under section 2-1401, counsel's obligations "might" include (1) amending a petition, (2) responding to a motion to dismiss, and (3) standing on the petition or

15

alternatively withdrawing as counsel, it cautioned that "any claim of a lack of due diligence sufficient to warrant remand depends on an arguably meritorious claim." *Id.* ¶ 43.

¶ 42    In this case, appointed counsel stated at the hearing on the State's motion to dismiss that she spoke with defendant, reviewed the appellate record, and reviewed several appellate decisions, including *Taylor*, *Gray*, *Williams*, and *Miles*.  Counsel added that she also reviewed the "court file" and "the laws associated with" the AHC statute.  Following that review, counsel elected to stand on the petition.  On these bare facts alone, counsel exercised due diligence.

¶ 43    Although defendant criticizes appointed counsel's failure to specifically apprise the trial court of the decision in *Dawson*, this criticism is unavailing.  The holding in *Dawson* mirrored that of *Gray* (also a First District decision), which counsel had already discussed with the court and which defendant cited in his petition.  *Dawson* added nothing new to the then-existing split of authority, which was no mystery to the trial court.  Moreover, as the State argues, a trial judge (as here), unlike a jury, is presumed to know the law and apply it correctly.  See *People v. Felton*, 2019 IL App (3d) 150595, ¶ 48.  Defendant has provided nothing (nor do we find anything in the record) to counter that presumption.  We therefore reject defendant's argument on this point.

¶ 44    Moreover, appointed counsel's apparent misunderstanding of the facts of *Stewart* do not alter our holding.  Although *Stewart* did not involve a juvenile adjudication (as counsel stated to the trial court), her conclusion that *Stewart* was inapplicable to defendant's claim was nonetheless correct.  As discussed, *Stewart* concerned a completely different statute that the legislature subsequently amended, resolving a previous split in its interpretation.  *Stewart*, 2022 IL 126116, ¶ 21-22.  Any claim of a lack of due diligence on appointed counsel's part that would justify remand requires an arguably meritorious claim.  *Stoecker*, 2020 IL 124807, ¶ 43.  Since we have already determined *supra* that defendant's petition is not arguably meritorious, remand here

would be unwarranted. Finally, we note that the *Stoecker* court stated that counsel had an obligation "*to the best of \*\*\* her legal ability*" to make a cogent argument in support of petitioner's claims and overcome any procedural hurdles in a legal and ethical manner. (Emphasis added.) *Id.* ¶ 42. The unmistakable inference from the quoted language is that counsel is not obligated to be perfect; instead, she must be diligent and exercise at a minimum the competence required under the Illinois Rules of Professional Conduct of 2010. See *id.* (citing, *inter alia*, Ill. Rs. Prof'l Conduct (2010)). Counsel did so here. Defendant's second claim of error is therefore without merit.

¶ 45                                           CONCLUSION

¶ 46    The trial court did not err in denying defendant's successive petition for relief from judgment. In addition, defendant's appointed counsel provided due diligence. Accordingly, we affirm the judgment of the trial court.

¶ 47    Affirmed.